**TIMOTHY J. THOMAS,**

            **Plaintiff,**

   **-vs-**

**ARBOR GREEN, INC.,**

            **Defendant.**

Case No. 04-C-212

## DECISION AND ORDER

The plaintiff, Timothy J. Thomas ("Thomas"), has sued his former employer, Arbor Green, Inc., for "quid pro quo" sexual harassment under Title VII.[1] Arbor Green has moved for summary judgment. For the reasons stated below, Arbor Green's motion is granted.

### FACTUAL BACKGROUND[2]

Arbor Green is a Wisconsin corporation that provides landscape and maintenance services, as well as construction of signs along public highways. Christy Wade is the president and majority owner of Arbor Green. Christy Wade's husband, Owen Wade, is vice president and co-owner of Arbor Green. The plaintiff, Timothy Thomas, began working for Arbor Green in November 2002 as its shop foreman.

---

[1] Thomas also brought claims for retaliation and hostile environment, but abandoned these claims in response to Arbor Green's motion.

[2] The following facts are undisputed for purposes of this motion.

Thomas' job involved performing maintenance on trucks, skid steers, and other Arbor Green equipment. Thomas' duties also included work on diesel engines, transmissions, drive trains, suspensions, spring, shocks, tires and rear ends; keeping Arbor Green's yard and shop area clean and organized; and ordering and pricing parts for equipment over the telephone. Plaintiff characterized his job as 50% repair work and 50% ordering and pricing parts over the telephone.

Arbor Green was aware that plaintiff suffered a shoulder injury during military service. Arbor Green was also aware that plaintiff suffered from arthritis, post-traumatic stress disorder and joint problems. (Plaintiff's Proposed Findings of Fact ("PPFF"), ¶¶ 24-26). According to Thomas, Arbor Green accommodated these injuries by ordering equipment that made his job easier and ensuring that other laborers were available to assist him should he need it. (PPFF ¶ 29-40).

During Thomas' employment, Arbor Green had employees whose job title was "foreman," and whose duties were to supervise crews of laborers at job sites in the field. Although plaintiff was hired as a "shop foreman," he was not paid a foreman's wages. Thomas was paid union scale for a mechanic. Plaintiff never evaluated another employee's work, and he never had any input on hiring, firing, pay, or hours of any other employee.

Sometime in January 2003, plaintiff and Christy Wade began a consensual sexual relationship. Plaintiff was married at the time, as was Christy Wade (to Owen Wade). In April 2003, Christy Wade filed for a divorce from Owen Wade. On Mother's Day

weekend (May 11) 2003, plaintiff moved into an apartment with Wade. Within two days, plaintiff moved out of the apartment again, and their personal relationship ended. Plaintiff returned to his wife and daughter approximately one week following the day he moved out of the apartment he shared with Wade. Plaintiff's pay rate and benefits did not change any time after his personal relationship with Wade ended.

Sometime after May 11, 2003, Christy Wade told plaintiff that Craig Fairbanks ("Fairbanks"), one of Arbor Green's foremen, would be plaintiff's direct supervisor. Plaintiff had told Wade that he did not like Fairbanks and did not want to be around him. Wade told plaintiff that she assigned Fairbanks to be his supervisor because plaintiff refused to speak to her. Fairbanks assumed responsibility for ordering parts over the telephone.

Christy Wade adjusted plaintiff's schedule to make certain that she and the plaintiff would not be in the shop at the same time. Plaintiff's hours were set at 5:00 a.m. to 1:00 p.m.. Previously, plaintiff had not been working regular set hours. Plaintiff's pay rate and benefits did not change when his hours were set. However, the change in plaintiff's work hours resulted in an approximate 10-15 hour weekly reduction in his work hours. At the time, Arbor Green was experiencing a period of financial stress, so overtime was reduced throughout the company. Ms. Wade also adjusted schedules such that Mr. Wade and additional laborers were no longer available to assist Thomas with his physical duties. (PPFF, ¶¶ 62-64).

Sometime after their relationship ended, Christy Wade spoke to plaintiff two or three times and asked if they could "work this out." On one occasion, Wade sat on the edge of plaintiff's desk and asked whether they could work things out. On another

occasion, Wade called plaintiff as he was driving home from work. Each time, plaintiff replied that the relationship was over. Each conversation lasted only a minute or two. Christy Wade did not make any other attempts to restart their relationship. Plaintiff never complained to anyone about these conversations.

Christy and Owen Wade began taking steps to repair their marriage approximately one week after plaintiff moved out of the apartment he shared with Ms. Wade. Mr. Wade was aware that plaintiff and Ms. Wade had a dating relationship. Around the end of May 2003, plaintiff alleges that Christy Wade told him that Owen Wade was "going to make [his] life miserable" and asked why plaintiff did not just quit and make it easier on himself. Plaintiff replied that he was not going to quit.

Plaintiff also received short, sexually oriented notes on the outside of envelopes containing his paychecks and reimbursement checks. One note read: "for the man with an angry inch! And that's all." The second read: "This should help towards that implant you're saving for!" The third read: "the penis extender you ordered is on backorder!" Plaintiff discovered the notes when he picked up his checks from their usual place in the office. Plaintiff could not say that Christy Wade wrote these notes. However, plaintiff inferred that Christy Wade knew about one of the notes because Wade and Norajean Hutchison ("Hutchison"), Wade's secretary, happened to be laughing when he came into the office and picked up the envelope. Plaintiff admits he was not completely sure Wade ever saw the notes. Plaintiff only complained about the notes to Hutchison. Plaintiff told Hutchison that the notes were not funny and asked why they kept "popping up" on his checks. After plaintiff complained to Hutchison, there were no more notes on plaintiff's checks.

Sometime after May 11, 2003, Fairbanks, at the direction of Christy Wade, instructed plaintiff to clean up some retaining wall blocks in Arbor Green's yard. Plaintiff does not know why Wade wanted him to move the blocks. Plaintiff lifted the blocks by hand and injured his shoulder. After the shoulder injury, plaintiff saw a doctor who issued work restrictions. As of June 18, 2003, plaintiff could not lift, carry, push, or pull more than 15 pounds and could not reach above shoulder level. Christy Wade determined that plaintiff could not perform his job with these restrictions, and sent him home. June 18, 2003 was the last day plaintiff actively worked for Arbor Green. Plaintiff could not perform his job at Arbor Green after June 18, 2003. Plaintiff claims that he has been totally disabled and has not been able to work at all since that date.

## ANALYSIS

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**I.     EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Before reaching the merits of plaintiff's *prima facie* case, Arbor Green argues that plaintiff has failed to exhaust his administrative remedies with respect to many of his *quid pro quo* claims. A Title VII plaintiff may only bring claims that he included in a charge

of discrimination to the EEOC, or that are like or reasonably related to the allegations of the charge. *See Geldon v. South Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005). This rule serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion, and of giving the employer some warning of the conduct about which the employee is aggrieved. *See Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). While a plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in the complaint, allegations are cognizable if they are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Id.* (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc). The test is satisfied if there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge. *Id.*

Plaintiff alleges the following adverse or tangible employment actions in his complaint: (1) demotion from shop foreman to mechanic, including being forced to "work under" Craig Fairbanks; (2) refusal to continue accommodating plaintiff's disability; (3) reduction in hours; (4) "humiliation" through notes left on paycheck; (5) being ordered to perform menial tasks like moving concrete blocks in the yard; and (6) termination. However, the only discriminatory actions mentioned in plaintiff's EEOC charge are his demotion and the notes received on his check envelopes. (Michael Frazier Affidavit,

Exhibit J).³ The other four claims in the complaint are not like or reasonably related to the two claims in the charge. To meet the exhaustion requirement, the allegations in the complaint must involve the same conduct and the same actors as alleged in the charge. *See Cheek*, 31 F.3d at 501. The alleged refusal to accommodate, performance of menial tasks, reduction of hours and termination do not involve the same conduct as the demotion and the paycheck notes. Therefore, the only actionable claims in this action involve the latter. *See, e.g., Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 539 (7th Cir. 2003) (claim of discrimination based on written warning not related to charge specifying only denial of training, failure to promote, and demotion); *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 710 (7th Cir. 2000) (charge alleging lack of overtime, failure to promote, and unpleasant job assignments did not include claim arising from suspension).

## II. *PRIMA FACIE* CASE: *QUID PRO QUO* SEXUAL HARASSMENT

Plaintiff proceeds under a *quid pro quo* theory of sexual harassment – that he was demoted, terminated, and subjected to various other "adverse employment actions" because he rebuffed Ms. Wade's efforts to reconcile their sexual relationship. A *prima facie* claim for *quid pro quo* sexual harassment involves the following elements: (1)

---

³ Plaintiff's August 15, 2003 charge states:

I.  I began employment with the Respondent in November 2002, as a Shop Foreman/Mechanic. From December 2002 to May 12, 2003, I had a consensual relationship with Christy Wade, owner. On May 12, 2003, I ended the relationship. She subsequently removed my foreman responsibilities and denied that I was ever hired as a foreman. From about May 23, 2003 to June 11, 2003, Christy Wade, subjected me to sexual harassment by repeatedly writing offensive statements related to the size of my genitalia on envelopes containing my pay and reimbursement checks and on a post-it note. The envelopes were left on top of a file cabinet where any employee could see them. At least two employees approached me about the statement she wrote on my envelopes and field employees were joking about it.

II.  The Respondent has not provided me with a reason for its actions.

III.  I believe that I have been discriminated against because of my sex (male) by being subjected to sexual harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended.

plaintiff is a member of a protected group; (2) the sexual advances were unwelcome; (3) the harassment was sexually motivated; (4) plaintiff's reaction to the advances affected a tangible aspect of her employment; and (5) respondeat superior has been established. *See Bryson v. Chicago State Univ.*, 96 F.3d 912, 915 (7th Cir. 1996); *Crosson v. Caremark, Inc.*, 212 F. Supp. 2d 875, 881. While the Supreme Court has downplayed the traditional distinction between *quid pro quo* and hostile work environment claims under Title VII, the distinction remains relevant in determining whether the plaintiff can establish a *prima facie* case. *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 753 (1998); *see also Crosson*, 212 F. Supp. 2d at 882 n.4 (N.D. Ill. 2002).

Thomas has failed to meet his *prima facie* burden of demonstrating that Arbor Green's alleged harassment was sexually motivated. All of the alleged "adverse employment actions" took place after the termination of Thomas' consensual sexual relationship with Ms. Wade. When an "employer penalizes an employee after the termination of a consensual relationship, a presumption arises that the employer acted not on the basis of gender, but on the basis of the failed relationship – a presumption rebuttable only if the employee can demonstrate that the employer demanded further sexual relationships before taking the action he did." *Keppler v. Hinsdale Township High Sch.*, 715 F. Supp. 862, 868-69 (citing *Huebschen v. Dept. of Health and Soc. Servs.*, 716 F. 2d 1167 (7th Cir. 1983)); *Holtz v. Marcus Theater Corp.*, 31 F. Supp. 2d 1139, 1148 (E.D. Wis. 1999). Therefore, any alleged adverse actions (*i.e.*, demotion, termination, undesirable assignment) were presumptively in response to his status as Ms. Wade's former lover.

Thomas has failed to rebut this presumption by demonstrating that the alleged adverse job actions were contingent upon his refusal or submission to further sexual relations with Ms. Wade. Sometime after their relationship ended, Ms. Wade spoke to plaintiff two or three times and asked if they could "work this out." On one occasion, Wade sat on the edge of plaintiff's desk and asked whether they could work things out. On another occasion, Wade called plaintiff as he was driving home from work. Each time, plaintiff replied that the relationship was over. Each conversation lasted only a minute or two. Construing this evidence in the light most favorable to the plaintiff, neither encounter even arguably equates to a demand for further sexual relationships. *See, e.g., Keppler*, 715 F. Supp. at 869 (to rebut presumption, plaintiff must show "not merely that [defendant] wanted their relationship to continue, but that [defendant] threatened punishment if copulation or some form or erotic engagement was refused").

With respect to the claims that were exhausted before the EEOC (demotion and "humiliation"), plaintiff has also failed to establish that he suffered any adverse or tangible employment actions. An adverse employment action is "more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir. 1996) (citation omitted). Of course, "not everything that makes an employee unhappy" will suffice to meet the adverse action requirement. *See Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) (holding that poor evaluations alone do not constitute an adverse employment action). Rather, an employee must show that "material harm

Case 2:04-cv-00212-RTR   Filed 10/16/06   Page 9 of 13   Document 107
-9-

has resulted from . . . the challenged actions." *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 692 (7th Cir. 2001).

Plaintiff's demotion from shop foreman to mechanic is not a materially adverse employment action. It is undisputed that the "demotion" did not accompany a loss in pay. He was always paid union scale for a mechanic. Also, even though he was hired as a "shop foreman," plaintiff was never responsible for evaluation and/or supervision of other employees. While plaintiff lost responsibility for ordering and pricing parts, responsibility that (according to the plaintiff) accounted for 50% of his job, plaintiff has not demonstrated how he was "materially harmed" by the loss of those job duties. Being forced to work under a person (Craig Fairbanks) that plaintiff disliked does not make the demotion actionable. Aside from general dislike, plaintiff fails to demonstrate how working under Craig Fairbanks caused him "material harm."

Plaintiff's alleged "humiliation" because of the sexually demeaning notes left on his paychecks also does not qualify as an "adverse employment action."[4] Plaintiff has failed to establish that he was subjected to harassment so severe or pervasive that it altered the terms and conditions of his employment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998). Being the subject of jokes at the workplace does not rise to the level of a tangible employment action. *See, e.g., Savino v. C.P. Hall Co.*, 199 F.3d 925, 933 (7th Cir. 1999)( "[T]he sporadic use of abusive language, gender-related jokes, and occasional teasing are fairly commonplace in some employment settings and do not amount to actionable harassment").

---

[4] While this claim would also fit under the rubric of a claim for hostile work environment, plaintiff explicitly states in his response brief that he has abandoned such a claim, instead using the alleged hostile work environment as a tangible or adverse employment action in the context of his *quid pro quo* claim.

## III.   PRETEXT

Assuming that plaintiff could meet his *prima facie* burden, plaintiff has failed to demonstrate that the proffered justifications for any of the alleged adverse employment actions were pretexts for discrimination. "Pretext is more than a mistake on the part of the employer; it is a phony excuse." *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004).

With respect to his termination,[5] plaintiff has failed to demonstrate that Arbor Green's proffered nondiscriminatory reason for termination – plaintiff's inability to perform his job duties after becoming disabled – was a pretext for discrimination. Plaintiff theorizes that if not for his refusal to continue a sexual relationship with Ms. Wade, he would not have been asked to do strenuous work in the yard (i.e., lifting the blocks that led to the aggravation of his shoulder injuries), and therefore would not have been subject to work restrictions. Plaintiff offers nothing more than his "belief" in this regard, which is insufficient to defeat summary judgment. (*See* PPFF, ¶ 126). In any event, even if plaintiff was forced to do strenuous work because of his refusal to continue his relationship with Ms. Wade, this does not undermine the fact that he was terminated because of the work restrictions that resulted from that strenuous work – a legitimate, nondiscriminatory justification.

As for the alleged demotion, Arbor Green assigned Fairbanks to be plaintiff's "supervisor" because plaintiff refused to speak to Christy Wade. Plaintiff admits this fact to be true yet offers nothing more than speculation regarding a discriminatory motive. (*See* Plaintiff's Response ("PR") to Defendant's Proposed Findings of Fact ("DPFF"), ¶ 39).[6] This is insufficient to defeat summary judgment. As for the reduction in hours, plaintiff also admits that Arbor Green was experiencing a period of financial stress when his overtime was reduced, and

---

[5] This is not to say that plaintiff's termination claim is actionable in this case. As discussed above, plaintiff failed to exhaust his administrative remedies with respect to this claim.

[6] Plaintiff failed to respond to this factual assertion, which has the same effect as an admission.

that overtime was reduced throughout the company. (*See* PR to DPFF, ¶ 47.) In response, plaintiff points only to the fact that Ms. Wade adjusted Thomas' work hours to make certain the two would not be in the shop at the same time, which resulted in the reduction in his hours. (*See* PPFF, ¶¶ 58-59.) This evidence is insufficient to create a material issue of fact. As noted above, the adjustment of work hours was presumptively in response to Thomas' status as Ms. Wade's former lover, not on account of his gender. This evidence does nothing to rebut that presumption.

Plaintiff also has failed to establish a discriminatory motive for being ordered to perform "menial tasks" – in this instance, lifting blocks in the yard. Lifting blocks in the yard was part of Thomas' general duty to keep the yard clean, both before and after his relationship with Ms. Wade. (*See* DPFF, ¶ 10; PR to DPFF, ¶ 10 (Admit)). As for the refusal to continue accommodating plaintiff's disability, plaintiff points to the adjustment of schedules so that Mr. Wade and additional laborers were unavailable to help Thomas with physical tasks in the yard. Additional laborers were unavailable because of the seasonal nature of Arbor Green's work. In the warm months (May included), Arbor Green's employees would work in the field in crews, leaving plaintiff alone in the shop area. (DPFF, ¶¶ 14, 23). With respect to Owen Wade, plaintiff once again offers nothing to contradict the presumption that Mr. Wade was made unavailable because of Thomas' status as Ms. Wade's former lover.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Arbor Green's Motion for Summary Judgment [Docket # 85] is **GRANTED**; and

2. This matter is **DISMISSED** in its entirety. The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 16th day of October, 2006.

**SO ORDERED,**

s/ Rudolph T. Randa
**HON. RUDOLPH T. RANDA
Chief Judge**